Our fourth case for this morning is Kelly Cosgriff against Winnebago County, Illinois. Mr. Lesmeister. Good morning, honorable panel. My name is James Lesmeister. I represent Kelly Cosgriff and Anita Cosgriff. May it please the court. At the heart of this matter is, say on August 8th, after receiving the August 7th, 2014 property tax card and the inflated assessment, had the Cosgriffs paid that tax, would they still have a cause of action? And the answer to my hypothetical, I believe, is yes, that they would still have a cause of action. And conversely, had they gone through the Board of Review hearing and the Board of Review had allowed their expert to testify and the Board of Review would have granted their relief and made the assessment at what the Cosgriffs experts opined, the Cosgriffs still would have this cause of action against these defendants. So you have to explain to us why that position is consistent with the fair assessment case, the McNary case from the Supreme Court. Why is our case different? Okay, yeah, we can look at it that way. The state taxation is protected very broadly from federal court interference. We start with the Tax Injunction Act. We all agree this is not a Tax Injunction Act case. But in the fair assessment in real estate against McNary decision, the Supreme Court pushed it one step further and said, well, actually, even in cases that aren't under the Tax Injunction Act, there are still cases that are governed by comity principles and we need to let the defendants, they did pursue some remedies in Winnebago County. The assessment went from 525,000, which may well have been a very abusive assessment, down to 409, and they didn't push it any further to see if maybe the even lower assessment that their expert thought was proper should have been done. They basically take the 409. So I don't know why that shows a failure of state procedures. I don't know why that's not the way things are supposed to happen. Because that is not the focus of our complaint. The focus of our complaint is the conduct that these state actors did. They ran rogue. What they did is cause and create a separate cause of action because they caused emotional distress. Why is that they had to go through this process? It may have been an offense that the state officials or the local officials were doing this kind of thing, but they've been given a lot of relief for that. Namely, the abusive assessment has been undone. The reason why it's different, and all cases are stressful and litigation is stressful for most people to walk through the courtroom. If they've not done it their whole life, even for young lawyers, it can be a traumatic experience. The difference here is constitutional rights that are involved, is the retaliation regarding their First Amendment speech. And to further answer your inquiry, Your Honor, regarding fair assessment, there was no First Amendment retaliation in the court. And the only remedy that the plaintiffs sought in fair assessment was that damage was what was paid and what should have been paid had the property been assessed at the average rate. The entire case of fair assessment was regarding the system itself. Regarding is that these plaintiffs are saying that systematically we think it's unconstitutional what St. Louis County is doing here. That St. Louis County is assessing people who have new improvements at 33% higher, and then if you're successful on an appeal, you're going to be subject to get targeted for reassessment in the next tax year. And what the court said is that is comedy, because that is something that's up for the state of Missouri, St. Louis County, and you can seek redress within that system itself regarding the taxing principles. But why is it that, I mean, it seems to me it would be very easy for somebody challenging a tax assessment, this is done at a very local level, to say my assessment was too high because the tax assessor hates me or something like that. Why is that subjective level even appropriate for us to look at? And that takes me even to these internal emails that you're relying on. Even if they don't reflect particularly well on the writers of the emails, why don't we evaluate this on an objective basis? They're using the remedies available to them. They're getting relief. Is it annoying? Yes. Is it offensive? Yes. But as you said, that's not unique to this kind of litigation. Again, in this case, the difference is that it's not the system itself that's at issue here, it's the conduct of the state actors. If they were doing what they were supposed to be doing and acting as prosecutors, they would have been investigating Joanne Hawes for the basis of her assessment. And that is the reason why there's a difference here. It is because the Costco's put up the two websites, Contest Taxes. I thought you started out by saying that if the original assessment of 525 had been made by somebody who was pure of heart and spirit, had just moved into Winnebago County, knew nothing about it, maybe made a terrible mistake, overrated the pool, that you wouldn't be here. And that you might not be here if the first assessment had been the 409. Again, if we have this pure of heart person. I don't quite see how we would keep a lid on your theory of digging into the actions of the assessors in this way. My hypothetical was, had the Costco's paid the tax when they first received it in August and then later did an FOI and saw the emails, then they would have this cause of action. And the reason it is different. Why would they? I mean, because they would be entitled to a refund. Perhaps they could go to the, I mean, there's actually, this happens a lot with taxes that you pay and you ask for a refund if you've paid too much. Is that not possible? Because what we're dealing here is with retaliation for them exercising their First Amendment rights. And is it the website that you're talking about? The website that they had when they sought assistance administratively as to the process for assessing the tax. And what was done was you had a state prosecutor say there will be consequences for this action. And it could have been anything. And not just the taxes. The cause of action is the conduct of these state actors and what they did. So it could have been anything. It could have been the Costco's wanting to change their name and they decided not to. They decided to frustrate their purpose as such. But in this case is what they did to retaliate against them was to inflate the tax. So that is why CAPRA and fair assessment are different than the case we have here with Because it's not just, we're not asking for an injunction. We're not asking to interfere with the taxing process of the state of Illinois with the Board of Review or the PTAB. We're not seeking to enjoin how they adjudicate and do things. What we have here is these defendants weaponized the system to get back at Mr. Costco's inquiries and for the posting of the plaintiff's websites. Therefore, taking it into a separate cause of action is You would say the same thing even if the revised tax assessed this property at $250,000. That's correct. Yes, that was my point when I first started. You're correct. That's my position. Is that separate and apart from the taxing process here, by the conduct of these defendants, they caused and created this cause of action because of their bad faith. What citizen would want this kind of targeting? What citizen would want this kind of harassment and focus? Of course, under McNary, the relevant question is whether when there is a problem, even the kind of abuse problem that you're talking about, whether the state affords in its courts plain, adequate, and complete remedies. I don't know why the kinds of things that you're talking about would not be amenable to remedies. That's where our opponents brought up Capra, saying that in Capra, the Seventh Circuit in Capra, said if you had an issue in terms of the constitutionality of the tax, you could have brought it through PTAB or you could have went to the circuit court. Whatever it took, the process, as long as it took, it took. However, the difference in Capra is that they were talking about the tax itself. What they were offended by was the position that because we may or may not have had an association or an affiliation with Frolic, that it shouldn't be for the Board of Review to go ahead and the Board of Review then saying, we're going to reverse our prior decision because of that. They were crying foul. It was unfair. Well, that opinion, though, in Capra said she may raise any and all constitutional objections to the tax. Exactly. It was strictly regarding the tax, and a reading of our complaint is not regarding the tax. How do you distinguish between the improper imposition of the raise of the assessed valuation as opposed to... We have the independent evidence. We have a prosecutor saying to his son, look what we have here. Boom, we got him. And that's for a trier of fact to decide. In our case, we have that independent evidence. We wouldn't be allowing anyone just to come out and say that. And if I've adequately answered your question, I would like to reserve the remaining of my time for rebuttal. Thank you. That's fine. Thank you. Ms. Shelley. May it please the Court, my name is Stacey Shelley. I am appearing on behalf of all of the appellees this morning. So can you answer me two questions? First of all, this initial 525,000 assessment looks terrible in light of the evidence of animus that the Cosgroves have brought together. So it's hard for me to imagine that there's anything good faith going on about that. But that leads to my second question, which is whether, picking up where Judge Kaney just was, whether the state courts would be open not just to constitutional theories relating to the tax, but to this ancillary set of theories about bad faith, animus, abusive process, and the like. Yes, Your Honor, I believe the Illinois state courts would, and I believe that that is consistent with the Supreme Court's decision in fair assessment. I think it's also consistent with this Court's decisions in Haidt v. Pitner and Capra. I believe the language in fair assessment talks about dealing with willful and malicious assessments. In fair assessment, the allegation was that the citizens who were appealing their assessments were being assessed at a 50% higher rate, 22%, 33%, and then that they were being retaliated against the next year for having brought that complaint. Similarly, in Haidt v. Pitner, the property owner, similar in this case, wouldn't allow the assessor on their property, and they were then subject to a very large increase. In that case, the Seventh Circuit held that fair assessment applied. I think they also held that the individual board members themselves were entitled to immunity for their actions. We don't have that situation here. They dismissed it without prejudice simply because that case, that cause of action remained pending, I believe, in PTAB at that time. Capra, as well, alleges the same three constitutional violations that the cause groups have alleged here. Retaliation, equal protection, and procedural due process. This Court found, rather unequivocally, that the Illinois State tax system, including the Illinois Circuit Court and the Appellate Courts, was the appropriate place to first hear that issue. That case remained pending, as well, in PTAB at the time that the petitioners in that case brought it into federal court. They, again, dismissed it without prejudice because it remained pending in PTAB. In this case, we don't even have that situation. The cause groups appealed their assessment in the Property Board of Review for Winnebago County, and then apparently were satisfied with that because they took no further action. So I note that the District Court, there were some supplemental claims. The District Court relinquished its jurisdiction over those state law claims. Is it your sense that they would still be able to go to the state courts on these theories that are now before us, or is it now too late? I believe that, well, the District Court dismissed the federal claims with prejudice. But relinquished jurisdiction over the supplemental state law claims. Correct. If this court were not willing to consider dismissal of those claims as well with prejudice, I think under the terms of the District Court's order, they could refile those pending the statute of limitations in state court, and we would probably be required to deal with those there. I think we would deal with them on the same basis that we briefed and asked the District Court to dismiss those claims there. I believe that this court can also resolve those claims here. I think that the same arguments with which we have brought the 12B6 motion in the District Court, that those can be applied and that this court could also dismiss those claims, in particular the claim for fraudulent assessment. So this is your other meritorious defenses. I'm a little concerned. I mean, this is always a little bit complicated, but you are just defending the District Court's judgment, which is the dismissal of the federal claims. And as I said, the District Court, the very last line of its opinion, says the court relinquishes jurisdiction over the supplemental remaining state law claims. So you didn't file a cross appeal to ask us to reach the state law claims. So it seems to me they're just out of the case at this point. Well, if that's what the court determines, yes, Your Honor. I think that the- I'm just reading the District Court's opinion and noting that there's no appeal saying, no, he made a mistake by relinquishing jurisdiction. I appreciate that, Your Honor. No, we did not file a cross appeal. But I think that the law allows the Seventh Circuit, even where a cross appeal is not filed, to consider those claims. Well, we can support the judgment on any ground preserved in the record, but the judgment here is only on the federal claims. I understand that, Your Honor. But I would argue, particularly with the claim for fraudulent assessment, that if this court believed that comity was the appropriate ground upon which those claims should be dismissed with prejudice, the federal constitutional claims, that the basis for that is the existence of the Illinois state property tax system, that that same reasoning applies to the fraudulent assessment claim because the Illinois law, and the courts have borne this out, abolished any tort for constructive fraud by the passage of that system. I think if it's appropriate to apply comity, I think that it's also appropriate to apply to the fraudulent assessment claim and dismiss that with prejudice. And 12b-6 in general requires the plaintiffs to state a claim which is plausible on its face. If this court were inclined to apply the same reasoning to dismiss the claim for fraudulent assessment, that would just leave the claim for intentional infliction of emotional distress. And I don't believe that under any reading of the complaint that that states a claim under Illinois law. And all of those are perfectly good arguments to make to the state court if this winds up being refiled. It may not. I don't know what's going to happen and maybe it would be barred by limitations. There's a lot out there that's unclear. I'm just saying that those claims are not before us right now. They were relinquished. I mean, that's what 1367c says. So it's, you know, we only have a certain package. And there may be a number of ways. I mean, you argue in your brief, at least, and we will consider them a number of ways to reject the federal claims. Yes, Your Honor. On that ground, you know, the plaintiffs here, I think, are dealing, the Cosgriffs are dealing with a couple of issues which prevent them, if we're going to narrow this to just the federal claims, that prevent them from any relief. One prevents them from getting into the front door of the federal court, which is the issue of comity. The other prevents them from recovering anything in any court. In order to state a claim for a constitutional tort, you have to have an injury, and they have stated no injury. How haven't they tried to describe, you know, just the emotional distress of feeling abused by the various taxing authorities? I mean, it's not a particular dollar and cent injury, but surely it's some kind of injury. Or do you think people, you know, as long as the bottom line winds up being okay, you know, the taxing authorities can do anything? Well, I think that the doctrine of comity requires them to be able to take the first stab at it. Certainly the cases Capra, Haid talk about. If there is a problem, take it to the state courts. That doesn't deny that there conceivably could be a problem. You're just saying the state courts are quite capable of addressing it. Well, I think if you look at each, they make three constitutional claims, First Amendment retaliation, procedural due process, and equal protection. We would have to take each of those separately to show why they have failed to state a claim. With respect to the First Amendment retaliation, part of that test requires them to show adverse conduct. And as part of that adverse conduct, it requires to show that there was an adverse action that had a chilling effect. I don't believe by any fair reading of the Cosgrove's complaint that they can argue that any action on behalf of any of the defendants in this case had any chilling effect on anything that they did. I think they continued to file the protest. They started a petition. There was nothing that actually had a chilling effect on anything that they, on any action that they took. That suggests that really tough people don't get constitutional protection and weak and easily chilled people do. And that doesn't strike me as a very good rule. Perhaps not, Your Honor, but they still don't have any damages. Okay. Unless the panel has any more questions. Thank you for your time. Thank you very much. Mr. Lesmeister. This is at the pleading stage, so we're not required to plead evidence or to prove our case in the complaint. And I think that just from the line of inquiry that I received from the panel, the concern is, am I asking this Court to abrogate Capra or to somehow make a decision that is contrary to the doctrines of fair assessment? And my answer is no. I'm not asking you to reverse Capra. I'm saying that in this case what we have here is more like Santana, the case that we cited. Remember, Santana was a non-lawyer who had learned how to do property tax assessments before the Cook County. And for whatever reason, Cook County, just to respond, they decided to ban him from the building. And in that case, the Seventh Circuit, the District Court, I'm sorry, the District Court said, well, he's pled a case for a class of one. He's pled a case against them in terms of what they did. So, again, what we have here is the damages are different. And as we pled, is the emotional distress that you suffer from this. And there's no redress if he would appeal this to PTAB after he received it. And mind you, at the time that he went to court on February 20, 2015, he didn't know about the emails. He didn't know about them at all. It wasn't until he did the FOI that he found out and he started receiving all this information. So there is a situation where we have tangible evidence that says, this is in violation of the civil rights. This is a violation of the constitutional First Amendment right, freedom of speech, retaliation. This is a targeting of an individual by state actors. This is the kind of conduct that the Civil Rights Act was to protect. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.